**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Glenn H. Stephens III Ph.D. J.D. ) <br> 6625 Colton Crawford Circle 108 ) <br> Falls Church Virginia 22042 ) <br>     *Plaintiff*, ) <br> v. ) <br> ) <br> Rosemary Dettling, Esq. ) <br> 1629 K Street, N.W., Suite 300 ) <br> Washington, DC 20006 ) <br>     *Defendant*, ) <br> _____ ) | Civil Action No. _____ <br><br><br><br><br> June 25, 2018 |

## COMPLAINT

### I. Jurisdiction and Venue

1. The D.C. Federal District Court has diversity- and pendent jurisdiction over this matter.

2. Venue is appropriate because the relevant transactions arose from Plaintiff's employment with the Defendant's firm, the Federal Employee Legal Services Center (FELSC), and the Defendant' violations of the District of Columbia's Wage Theft Prevention Amendment Act of 2014 (WPL), 61 D.C. Reg. 10157 (Oct. 3, 2014) during and after his employment.

### II. The Parties

3. Glenn H. Stephens III is an arbitrator, certified mediator, attorney, and professor currently residing in Falls Church, Virginia. The Stephens have practiced law for 500 years. Stephens' 11th great grandfather, Thomas Stephens was Attorney General to Charles I and a Member of Parliament (MP). His son, Edward, married Mary Hale, the daughter of Lord Matthew Hale, one of the preeminent legal scholars in Anglo-Saxon jurisprudence.

Like his ancestors, Glenn Stephens has participated in politics, government, and law most of his life. He first participated in politics at age 10. In high school, Stephens served on the powerful State Student Advisory Board, which advised Pennsylvania Secretary of Education John Pittinger. Secretary Pittinger is known to lawyers as the defendant in *Meek v. Pittenger*, 421 U.S. 349, 351 (1975), an establishment clause case taught in most Constitutional law courses. Pittenger was one of Stephens' college references. While in college, Stephens was elected to Student Counsel all four years and President as a senior.

At Duke University, Stephens worked as a research assistant for S.A.L.T. negotiator and Deputy Assistant Secretary of Defense for European and NATO Affairs Joseph Kruzel. I Stephens earned a M.A., C. Phil. and Ph.D. degrees in Political Science. After graduate school, Stephens worked as a teaching assistant or professor at colleges and universities including UCLA, Princeton, Pomona College, Scripps College, Boalt Hall and Penn State.

1

> In 1997, Stephens entered the University of California School of Law (Boalt Hall). At Boalt Hall, Stephens was Co-Editor-in-Chief of the Berkeley Journal of Employment and Labor Law (BJELL), the most widely cited labor and employment law journal in the world.
>
> After graduation, Stephens practiced pensions and benefits law at two of the East Coast's leading ERISA firms – Slevin & Hart PC and O'Donoghue & O'Donoghue. From 2002 to 2008, Stephens served as Senior Counsel to National Labor Relations Board Member and later Chair Wilma Liebman. Stephens was elected Liebman-staff shop steward and Board-side grievance chair for the National Labor Relations Board Professional Association (NLRB-PA), the federal-sector union representing the Board's headquarter attorneys.
>
> In 2008, Stephens left the Board to begin a gradual transition out of the dying field of labor law into the growing fields of employment law and alternative dispute resolution (ADR). From 2008 to 2013, Stephens taught labor law, employment law and workplace dispute resolution, live and online, with Penn State's School of Labor and Employment Relations.
>
> In 2013 and 2015, Stephens was certified and then recertified to mediate court-referred general district court cases by the Virginia Supreme Court. Stephens is currently certified by the Virginia Supreme Court to mediate Juvenile & Domestic Relations District Court (J&DR) cases. From 2013 to 2015, Stephens mediated federal workplace disputes and Equal Employment Opportunity Commission (EEOC) cases with Federal Sharing Neutrals (SN), the federal government's interagency neutrals service. Stephens has mediated over 104 cases with a settlement rate of roughly 80%. He has also arbitrated since 2015.
>
> To develop expertise in federal sector EEO complaint processing, from 2013 to 2015, Stephens worked as an Equal Opportunity Specialist at USDA, overseeing complaint investigations. Stephens is a certified EEOC counselor and certified EEOC investigator.
>
> In August 2015, Stephens formed his own virtual, low-bono employment law firm to help bridge the justice gap. He represents most clients pro bono, low bono, or for law flat fees.

4. Rosemary Dettling is an employment lawyer and the principal of Federal Employee Legal Services Center (FELSC), D.C. firm which employs attorneys and others in the District.

### III. Wage Theft Protection Act

5. The Wage Theft Prevention Amendment Act (WPL) provides for "remedies, fines, and administrative penalties when an employer fails to pay earned wages." See *Lincoln-Odumu v. Medical Faculty Assocs.*, 2016 U.S. Dist. LEXIS 88659, *13 (July 8, 2016)(BAH).

6. In adopting these amendments, the D.C. Council (Council) observed.

> Underpaying or stealing wages from workers lowers tax revenues, which can depress consumer spending and stunt economic growth because less disposable income translates into less money spent at local businesses. . . . dishonest employers steal from taxpayers when they do not pay their fair share of payroll taxes.

2

7. The WPL amendments made "it easier for workers to collect awards from businesses that steal their wages."  See *Lincoln-Odumu v. M.F.A..*, 2016 U.S. Dist. LEXIS 88659, *14-15.

8. In their Report on the WPL amendments, the Council's Committee on Business, Consumer and Regulatory Affairs "recognize[d] the tremendous bravery of those who came forward to testify and share their personal experience with wage theft." See footnote 1.

9. The 2014 amendments "expanded the WPCL's already-broad reach to cover additional categories of employers and a wider universe of employees. Specifically, the definition of covered employers was broadened to include general contractors and subcontractors, as well as the legal representatives. . . . Sec. 2(a)(1)."  See *Lincoln-Odumu, supra,* at *13.

10. "Likewise . . .the definition of 'employee' was broadened to remove an existing exception for individuals holding executive, administrative, and professional positions. . . .Sec. 2(a)(2)."  Id.

11. Until amended, the WPL "expressly exempted executive and professional employees from its protections." See Wage Theft Prevention Amendment Act of 2014, Law 20-157 (Act 20-426) (approved Sept. 19, 2014; effective Feb. 26, 2015) cited in *Strobos v. RxBio, Inc.*, 251 F. Supp. 3d 221, 237 (D.D.C. 2017)(JEB)(assigning case to Judge James E. Boasberg).

12. Under the amended WPL, "The term 'wage theft' covers a variety of infractions that occur when workers are deprived their legally or contractually promised wages. . . . Common forms of wage theft are nonpayment of part or all of a worker's regular wages . . . or other earned compensation."  Committee Report p. 2.

13. The amended WPL "imposes criminal penalties upon employers who negligently or willfully fail to comply with its provisions. id. § 32-1307." See *Vasquez v. Whole Foods Mkt., Inc.*, 2018 U.S. Dist. LEXIS 21492, *34 (February 8, 2018)(APM).

14. § 32-1307(I)(a) was amended to read "Any employer who negligently fails to comply with the provisions of this Act. . . shall be guilty of a misdemeanor."

15. The amended WPL "requires all District of Columbia employers to provide a 'Notice of Hire Form' to employees. Failure to provide the required 'Notice of Hire Form' shall result in the imposition of an administrative penalty of $500 for each employee that fails to receive the 'Notice of Hire Form.'" https://does.dc.gov/page/wage-theft-prevention-amendment-act-2014.

16. § 32–1010(b) provides, "An employee complaint or other communication need not make explicit reference to any section or provision of this subchapter to trigger the protections of this section."

17. The amended WPL also "provides anti-retaliation protection for workers who hold employers accountable for failing to pay wages owed."  See Committee Report p. 2.

18. § 32–1010(a)(3)(E) provides "It shall be unlawful for any employer to . . . Discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee or person because that employee. . . Exercised rights protected under this subchapter."

3

### IV. Facts

19. In late May and early June 2015, FELSC's principal and owner, Rosemary Dettling and Stephens began an email exchange and conducted an interview that culminated in his hire.

20. On June 2, 2015, Dettling emailed Stephens a FELSC employment agreement for his signature and other documents and instructions related to his intake position.

21. The documents that Dettling sent to Stephens did not include a WPL Notice of Hire Form.

22. The employment contract between FELSC and Stephens provided in relevant part:

    The Consultant agrees that, on every other Friday, the Consultant will submit a billing statement (emailed to rdettling@felsc.com) summarizing the Consultant's intake progress for the week. . . . The billing statement should include the approximate **time spent** . . . on any administrative matters (**like sending emails to potential clients** . . . [Emphasis added].

23. Consistent with their employment agreement, on June 21, 2015, Stephens emailed Dettling a billing statement and explained his hours and the task her performed in those hours:

    The 31.5 is the total billable time I spent working on client queries. . . . In addition to making the calls, as I explained, my work on the client queries includes printing incoming emails, drafting emails, responding to emails, drafting retainers, and sending retainers. My billing of these administrative tasks is expressly discussed in the first two sections of the agreement we reached.

24. On June 26, 2015, Dettling knowingly refused to pay Stephens for e-mails:

    I will pay for the calls, but [I] see no need to pay an additional amount for administrative work. The administrative work should be minimal and should be wrapped up in the time you bill for a call. It may take a minute or two to open an email and email a retainer. It would be different if you were required to modify contracts for each potential client, but that is not the case here.

25. On Friday June 26, 2015, at 12:33 PM Stephens emailed notice of continued performance:

    [Rosemary] [a]lthough your clearly stated intention to breach our contract by not paying for administrative tasks and claim you must only pay for time on the phone not billable hours relieves me of my obligations to provide stated consideration, I will not breach. . . . I will continue to check for queries and if queries are forwarded, make calls that day as contracted. And record those calls and time.

26. Ten minutes later, at 12:43 PM, Dettling responded to Stephens email by firing him:

    You have to be kidding? I can't work with someone who accuses me of doing something illegal. Please send me your final bill. Your services are no longer needed.

4

27. On Friday June 27, 2015, Stephens again reminded Dettling of the terms of their agreement.

    You need to take another look at our contact. Administrative tasks are expressly mentioned in our contract. The penultimate sentence of Section 2 provides "The billing statement should include the time spent on any administrative matters (like sending emails to potential clients, etc.). And thus, the plain language of the contract does not limit billing to calls only. . . . I am not going to perform work necessary for processing of the calls and the recordation of calls and hours for free. Yesterday, the process of printing the e-mail queries, recording the clients phone numbers and names on my billing chart, recording the date and length of phone calls, was billed for .16 of an hour – 9 minutes. Costing you about $8.

28. On June 28, 2015, Dettling falsely accused Stephens of "erratic and violent behavior."

29. On October 28, 2016, Dettling falsely accused Stephens of criminal behavior:

    Mr. Stephens worked for Defendant as a contract employee in June 2015. [I] terminated him in less than three weeks. Since then, he has subjected [me] to **cyberstalking** [with] defamatory reviews on the Internet. [Emphasis added]

30. On March 04, 2017, Dettling falsely claimed Stephens posted a negative review of FELSC:

    This review was most likely written by a former employee who worked for FELSC in 2015, for only two weeks. After he was let go, he started to post false, defamatory reviews online, in retaliation for his termination.

31. From the time she fired Stephens for protesting her attempted wage-theft to today, Dettling waged a campaign of retaliation against Stephens, attacking Stephens' reputation again and again, even in cases and actions in which Stephens was not a party or representative.

### V. Complaint Allegations

The following complaint allegations incorporate factual averments 19-32 above.

### COUNT 1

By failing to provide Stephens and other new FELSC employees with WPL-required Notice to Hire Forms, Dettling has repeatedly committed criminal violations of WPL § 32-1307(I)(a).

### COUNT 2

By her retaliatory firing of Stephens, Dettling violated WPL § 32–1010(a)(3)(E).

### COUNT 3

By her retaliatory campaign Stephens, Dettling violated WPL § 32–1010(a)(3)(E).

## VI. Relief

1. Order Dettling to cease and desist retaliation against Stephens.

2. Order Dettling to pay $500 for each failure to provide the Notice to Hire form.

3. Order Dettling to reinstate and pay backpay with interest to Stephens.

4. The Court's recommendation that Dettling be disbarred from D.C. Federal District Court.

/S/   Glenn Stephens   6/25/2018
Glenn H. Stephens III Ph.D., J.D.
6625 Colton Crawford Circle 108
Falls Church VA 22042
202-258-6521
Gonzalesstephenslaw@gmail.com

**CERTIFICATE OF SERVICE**

I certify on June 25, 2018, a copy of the above was efiled and thereby served on Defendant.

<u>*/S/   Glenn Stephens   6/25/2018*</u>
Glenn H. Stephens III Ph.D., J.D.
6625 Colton Crawford Circle 108
Falls Church VA 22042
202-258-6521
Gonzalesstephenslaw@gmail.com